IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No.  05-cv-01086-WYD-MJW

CHARLES SREBNIK;
JOANN SREBNIK;
MICHELLE SREBNIK;
LEE SREBNIK;
GARY DEVONPORT;
AIMEE DEVONPORT;
ALLISON OKON, individually, and as Trustee for the Matthew Okon Trust; and
DARYL DINKLA,

      Plaintiffs,

v.

NORMAN M. DEAN, individually;
JAMES E. MILLER, individually;
CLARK A. MILLER, individually;
MFL, INC., a Colorado corporation;
ANDERSON & WHITNEY, P.C., a Colorado professional corporation; and
COMISKEY & COMPANY, PROFESSIONAL CORPORATION, a Colorado professional
corporation,
SHERMAN & HOWARD L.L.C., a Delaware Limited Liability Company,

      Defendants,

and

MILLER DIVERSIFIED CORP., a Nevada Corporation

      as Nominal Defendant.

_____

## ORDER
_____

I.    <u>INTRODUCTION</u>

    THIS MATTER is before the Court on several motions to dismiss including:

(1) Defendants' Norman M. Dean, James E. Miller, Clark E. Miller, Miller Diversified

Corporation and Miller Feedlots, Inc. (collectively, the "MDC Defendants") Combined

Motion to Dismiss and Motion to Strike First Amended Complaint, filed December 2,

2005 (docket #106)[1]; Defendant Comiskey & Company's Motion for Partial Summary

Judgment as to Derivative Claims Alleged in First Amended Verified Complaint, filed

December 2, 2005 (docket #110)[2]; (3) Defendant Comiskey & Company's Motion to

Strike First Amended Verified Complaint for Failure to Comply With Rules 8 and 9(b),

filed December 2, 2005 (docket #112)[3]; (4) Defendant Comiskey & Company's Motion

to Strike Certificates of Review and to Dismiss First Amended Verified Complaint

Pursuant to C.R.S. § 13-20-602(4), filed December 2, 2005 (docket #114); (5) Motion of

Defendant Comiskey & Company to Dismiss Nineteenth Claim for Relief Pursuant to

Fed. R. Civ. P. 12(b)(6), filed December 6, 2005 (docket # 116); and (6) Anderson &

Whitney's Rule 12(b)(6) Motion to Dismiss Claims, filed December 6, 2005 (docket #

118)[4].

---

[1] Pursuant to the Minute Order entered March 31, 2006, arguments raised in Defendants Norman M. Dean, James E. Miller, Clark A. Miller and Miller Feedlots, Inc. Motion to Strike Verified Complaint for Failure to Comply With Rule 8, filed July 20, 2005 (docket #23) and the Motion to Dismiss, filed July 20, 2005 (docket #24), which were denied as moot, are incorporated into the discussion of Defendants' Combined Motion to Dismiss and Motion to Strike First Amended Complaint, filed December 2, 2005 (docket #106).

[2] Defendant Sherman & Howard filed a joinder in this motion on April 25, 2006.

[3] Defendant Anderson & Whitney filed a Notice of Joinder in this motion on December 6, 2005 (docket #117); Defendant Sherman & Howard filed a joinder in this motion on April 25, 2006 (docket #204).

[4] Pursuant to the Minute Order entered March 31, 2006, arguments raised in Defendant Anderson & Whitney's Rule 12(b)(6) Motion to Dismiss Claims Against Anderson & Whitney, filed July 26, 2005 (docket #30), which was denied as moot, are

II.   <u>FACTUAL BACKGROUND</u>

According to the First Amended Complaint, filed November 21, 2005, this is a

shareholders' derivative action brought by various individual Plaintiffs, as well as the

Trustee for the Matthew Okon Trust, pursuant to federal securities laws and the

Sarbanes-Oxley Act.   First Am. Comp. at ¶ 1.   Plaintiffs are shareholders of Miller

Diversified Corp. ("MDC"), a public company in the cattle feedlot business in Greeley,

Colorado.   *Id.*   Defendants Norman M. Dean, James E. Miller, and Clark A. Miller are

officers, directors, and controlling shareholders of MDC (collectively, the "Management

Defendants").   *Id.*   Defendant Miller Feedlots Inc. is a Colorado corporation, owned and

controlled by the Management Defendants.   *Id.*   Plaintiffs allege that the Management

Defendants "looted [MDC's] assets through concealed 'off the books' payments, sham

loans and other bogus transactions including their fraudulent acquisition of [MDC's]

business for a promissory note issued by an insolvent company" owned by the

Management Defendants.   *Id.* at pg. 2.   Plaintiffs further allege that the Management

Defendants fraudulently "wiped out [MDC's] shareholders' equity, rendering the

Company an insolvent shell and purportedly in debt to the Directors."   *Id.*

Defendant Anderson & Whitney, P.C. was MDC's auditor from 1987 until August

2003 and allegedly assisted the Management Defendants in the "preparation of the

Proxy Statement relating to their unlawful and fraudulent acquisition of MDC's business

and assets."   *Id.* at 26.   Defendant Comiskey & Company audited MDC's fiscal years

---

incorporated into the discussion of Defendant Anderson & Whitney's Notice to Renew
and Apply Rule 12(b)(6) Motion to Dismiss to Plaintiffs' First Amended Complaint, filed
December 12, 2005 (docket #118).

2002-2004, and is its current auditor. *Id.* at 27. Defendant Sherman & Howard, L.L.C. provided legal services to MDC and allegedly assisted the Management Defendants in the "preparation of the Proxy Statement relating to their unlawful and fraudulent acquisition of MDC's business and assets." *Id.* at 28.

III.   ANALYSIS

A.   Motion to Dismiss:

I begin with the MDC Defendants' Motion to Dismiss Plaintiffs' Third, Fourth, Fifth, Sixth[5], Seventh, Eighth, Ninth, Tenth, Twelfth and Thirteenth claims for relief filed December 2, 2005 (docket #106). The MDC Defendants move to dismiss Plaintiffs' Third, Fourth, Fifth, Eighth and Ninth Claims for Relief based on their assertion that the federal statutes under which those claims are brought, namely §§ 13(a),(k) and (d), and § 16(a), of the Securities and Exchange Act of 1934 ("Exchange Act") and §§ 906, 302 and 402 of the Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley Act"), do not provide a private right of action. The MDC Defendants further contend that Plaintiffs' Seventh Claim for Relief, brought pursuant to § 20(a) of the Exchange Act, does not constitute a separate cause of action, and that Plaintiffs' Tenth, Twelfth, and Thirteenth claims for "Ultra Vires Acts," "Abuse of Control," and "Gross Mismanagement," are not independent causes of action but together constitute part of Plaintiffs' Eleventh Claim for Relief for "Breach of Fiduciary Duty."

---

[5]While the motion to dismiss states that the MDC Defendants seek dismissal of the Sixth Claim for Relief, the motion itself contains no argument in support of dismissal of this claim. I will not consider the belated argument concerning the Sixth Claim for Relief raised for the first time in the MDC Defendants' Reply.

In reviewing the motion to dismiss, I "'must accept all the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff.'" *David v. City and County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996) (quotation omitted), *cert. denied*, 522 U.S. 858 (1997). "A complaint may be dismissed pursuant to [Rule] 12(b)(6) only 'if the plaintiff can prove no set of facts to support a claim for relief.'" *Id.*

### 1.    Private Rights of Action

Private rights of action to enforce federal law must be created by Congress. *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). In determining whether a private right of action exists within a federal statute that does not expressly provide for one, I focus solely on Congressional intent underlying the particular statute at issue. *Boswell v. Skywest Airlines, Inc.*, 361 F.3d 1263, 1267 (10th Cir. 2004) (citing *Transamerica Mortgage Advisors v. Lewis*, 444 U.S. 11, 15-16 (1979); *Alexander*, 532 U.S. at 286-87. I must determine whether Congress intended to create not only a private right in favor of Plaintiffs, but also a private remedy. *Sandoval*, 532 U.S. at 286. In the absence of statutory intent to create a private remedy, a cause of action does not exist, and I may not create one "no matter how desirable that might be as a policy matter, or how compatible with the statute." *Sandoval*, 532 U.S. at 286-87. In determining Congressional intent under this standard I examine the statutes at issue for "rights creating language" which "explicitly confer[s] a right directly on a class of persons that include[s] the plaintiff[s]," and consider the relation between the provision at issue and the overall statutory scheme. *Boswell*, 361 F.3d at 1267 (quoting *Cannon v. Univ. of*

*Chicago*, 441 U.S. 677, 690 n. 13 (1979)).

      2.    Third Claim for Relief

Plaintiffs' Third, Fifth and Ninth claims are brought under §§ 13(a), (k) and (d) of the Securities and Exchange Act of 1934 and §§ 302, 402, 906 of the Sarbanes-Oxley Act of 2002.  In their Third Claim for Relief, Plaintiffs allege that the Management Defendants failed to timely file SEC Reports and falsely certified SEC Reports in violation of § 13(a) of the Exchange Act, which requires the filing of various information, reports and documents as required by the rules and regulations of the SEC.  *See* 15 U.S.C. § 78m(a).  While the Tenth Circuit has not directly addressed whether a private right of action exists under § 13(a), the Third Circuit has held that § 13(a) does not afford a private right of action and that a plaintiff's sole remedy for violations of § 13(a) is § 18(a) of the Exchange Act, which provides a right of action for individuals who have purchased or sold securities in reliance on false or misleading information contained in § 13(a) reports.  *See In re Penn Cent. Sec. Litig.*, 494 F.2d 528, 540-41 (3d Cir. 1973); *see also Smith v. Murchison*, 310 F.Supp. 1079, 1088 (D.C.N.Y. 1980); *McLaughlin v. Campbell*, 410 F.Supp. 1321, 1325 (D.C. Mass. 1979).  I find the Third Circuit's reasoning in *In re Penn* persuasive.  As the Third Circuit recognized, "[w]e have not been cited to any language or to any history in the Exchange Act which indicates that Congress intended to extend the protection offered by § 13(a) beyond the class of purchasers or sellers."  *In re Penn*, 494 F.2d at 540.  The fact that Congress specifically provided a private right of action for purchasers and sellers of securities under § 18(a) is evidence that Congress intended that section "to provide the exclusive

remedy for misstatements contained in any reports filed with the Commission." *See Touche Ross & Co. v. Redington*, 442 U.S. 560, 569, 574 (1979) (holding that the record keeping and filing provisions contained in § 17(a) did not give rise to a private cause of action where the statute at issue neither conferred rights on private parties nor proscribed any conduct as unlawful).

Plaintiffs contend that several other courts have recognized a private right of action for alleged violations of § 13(a). Plaintiffs cite two federal district court cases from the Southern District of New York, *Kroese v. Crawford*, Fed. Sec. L. Rep. ¶ 91,262 (S.D.N.Y. 1963) and *Kaminsky v. Abrams*, 281 F. Supp. 501, 505 (S.D.N.Y. 1968), both of which were decided prior to the Third Circuit's decision in *In re Penn*. Two other cases cited by Plaintiffs, *Miller v. Frisco, Inc.*, 376 F.Supp. 468, 469 (E.D. Pa. 1974), and *Maher v. Zapata Corp.*, 490 F.Supp. 348, 349 (S.D. Tex. 1990), do not address whether Congress intended to provide a private right of action under § 13(a). Plaintiffs provide no additional evidence of Congressional intent to provide a private right of action under § 13(a). I find that § 13(a) contains neither an express private right of action nor does the provision, in the context of the statutory scheme, evidence Congressional intent to create an implied private right of action. *See Boswell*, 361 F.3d at 1267. Therefore, Plaintiffs' Third Claim for Relief under § 13(a) is **DISMISSED**.

### 3.   Ninth Claim for Relief

Plaintiffs' Ninth Claim for Relief alleges violation of § 13(d), which requires that any person who owns or acquires five percent or more of any equity security of a class registered pursuant to § 12 must send to the company, and file with the SEC, a

statement concerning such ownership.  *See* 15 U.S.C. § 78m(d)(1).  The First Amended

Complaint seeks damages for the Management Defendants' alleged failure to file an

accurate and complete Schedule 13D.  "The purpose behind Section 13(d) is to alert

the marketplace and holders of the security in question to every large rapid aggression

or accumulation of that security . . . which might reflect a potential change in corporate

control."  *K-N Energy, Inc. v. Gulf Interstate Co.*, 607 F.Supp. 756, 762 (D. Colo. 1983).

Such information allows existing shareholders and potential investors to make informed

investment decisions.  *K-N Energy*, 607 F.Supp. 762.  As Defendants acknowledge, the

Court in *K-N Energy* recognized a private right of action under § 13(d) in cases where

an issuer of a security seeks injunctive relief to correct a false or misleading Schedule

13D.  The Court in *K-N Energy* found that "[t]he purpose behind Section 13(d) would be

substantially frustrated if corporate issuers were precluded from seeking injunctive

relief where an error or omission is detected in a Schedule 13D."  *Id* at 764; *see also*

*Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1157 (9th Cir. 1992) (issuer corporation

can maintain a private right of action for injunctive relief under Section 13(d)).

In this case, however, Plaintiffs are not issuers of a security seeking injunctive

relief - they are shareholders seeking damages in connection with Defendants' alleged

failure to file an accurate and complete Schedule 13D.  Section 13(d) does not

expressly provide for a private right of action.  In response to the motion to dismiss,

Plaintiffs state other courts have "consistently upheld an implied private right of action

for violations of Section 13(d) in actions on behalf of shareholders of companies."

Response at 4.  However the cases cited by Plaintiff involve § 13(d) claims for

injunctive relief.  *See Indiana Nat. Corp. v. Rich*, 712 F.2d 1180, 1181 (7th Cir. 1983)

(issuer corporation sought injunctive relief); *GAF Corp. v. Milstein*, 453 F.2d 709, 719

(2d Cir. 1971) (issuer of security sought injunctive relief); *Oklahoma Pub. Co. v.*

*Standard Metals Corp.*, 541 F.Supp. 1109, 1113-14 (W.D. Okla. 1982) (plaintiff sought

mandatory injunction); *Grow Chemical Corp. v. Uran*, 316 F.Supp. 891 (S.D.N.Y. 1970)

(plaintiff sought injunctive relief).  Similar to the *K-N Energy* case, these cases discuss

that the only way to make the § 13(d) disclosure requirements effective is to permit

issuer corporations to pursue a private right of action for injunctive relief.  *See, e.g.*

*Indiana Nat*, 712 F.2d at 1184 ("[t]he only party with both the capability and incentive to

pursue these violations is the issuer corporation.").  Plaintiffs have not cited any case

law or other authority suggesting that Congress intended that shareholders should be

able to maintain a private right of action for damages under § 13(d).  As discussed

above, § 18(a) provides a right of action for individuals who have purchased or sold

securities in reliance on false or misleading information.  I decline to find a private right

of action under § 13(d) for Plaintiffs in this case.  *See Myers v. American Leisure Time*

*Enterprises, Inc.*, 402 F.Supp. 213, 215 (S.D.N.Y. 1975) (plaintiffs who were not

purchasers or sellers of security could not maintain an action for damages for alleged

violation of § 13(d), particularly where violation concerned filing of false or misleading

statements); *Wellman v. Dickinson*, 497 F.Supp. 824, 835 (S.D.N.Y. 1980) (no private

right of action for damages exists under § 13(d)).  Accordingly, Plaintiffs' Ninth Claim

for Relief is **DISMISSED**.

4.   <u>Claims Under §§ 906, 302 and 402 of the Sarbanes-Oxley Act</u>

Plaintiffs' Third, Fourth and Fifth Claims for relief allege violations of §§ 906, 302 and 402 of the Sarbanes-Oxley Act, and § 13(k) of the Exchange Act.  The MDC Defendants contend that §§ 906, 302, and 402 of the Sarbanes-Oxley Act provide for criminal sanctions and do not contain a private right of action.  Plaintiffs acknowledge that §§ 906 and 302 set forth criminal penalties for non-compliance, but note that while Congress and the SEC have specifically prohibited private rights of action with respect to other sections of the Sarbanes-Oxley Act, they have not specifically prohibited privates rights of action under §§ 906, 302, and 402.  Plaintiffs further assert that allowing private rights of action for certain Sarbanes-Oxley violations is consistent with judicial authority finding private rights of action for violations of other provisions of the Exchange Act include § 10(b).

Section 302 of the Sarbanes-Oxley Act, 15 U.S.C. § 7241, provides that "[t]he Commission shall, by rule, require, for each company filing periodic reports under section 13(a) or 15(d) of the [Exchange Act], that the principal executive officer or officers . . . certify in each annual or quarterly report filed or submitted under either such section of such Act that" the signing officer has reviewed the report and that the information therein "fairly represents" the company's financial condition.  Similarly, § 906, 18 U.S.C. § 1350(a), provides that "[e]ach periodic report containing financial statements filed by an issuer with the Securities Exchange Commission pursuant to section 13(a) or 15(d) of the [Exchange Act] shall be accompanied by a written statement by the chief executive officer and chief financial officer," that the periodic

report fully complies with the requirements of § 13(a) or 15(d).  Section 1350(c) establishes criminal penalties for violations of subsection (a).

Section 402 of the Sarbanes-Oxley Act added a new subsection, § 13(k), to the Exchange Act, which makes it "unlawful" for a reporting company, directly or indirectly, "to extend or maintain credit, to arrange for the extension of credit, or to renew an extension of credit, in the form of a personal loan to or for any director or executive officer . . . of that issuer."  15 U.S.C. § 78m(k).

The parties have not cited any judicial authority addressing the availability of a private right of action under §§ 302, 906 and 402 of the Sarbanes-Oxley Act, nor is the Court aware of any such authority.  None of these sections expressly provides for a private right of action, so I must focus solely on Congressional intent.  *Boswell*, 361 F.3d at 1267.  Neither the MDC Defendants nor Plaintiffs addresses statutory intent, and neither party has developed cogent arguments in support of their respective positions.  I note, however, that the text of §§ 302, 906 or 402 do not contain any "rights creating" language or other indication that Congress intended to create a private right of action in favor of a class of shareholders for violation of these provisions.  *See Touche Ross & Co.*, 442 U.S. at 569.  I further note that § 306 of the Sarbanes-Oxley Act, which makes it unlawful for directors or executive officers to buy or sell any of the issuer's equity securities during a pension fund blackout period, expressly states: "an action to recover profits in accordance with this subsection may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and on behalf of the issuer if the issuer fails or

refuses to bring such action . . . ." 15 U.S.C. § 7244(a)(2)(B). "Section 306 demonstrates that when Congress intended to create a private remedy, it did so explicitly and in unmistakable terms." *See Kogan v. Robinson*, 432 F.Supp. 2d 1075, 1081-82 (S.D. Cal. 2006) (citing *Touche Ross & Co.*, 442 U.S. at 572). Where Congress explicitly creates a private right of action in § 306, but not in §§ 302, 905 and 402, the "natural inference" is that Congress did not intend to create a private right of action under these sections. *Neer v. Pelino*, 389 F.Supp. 2d 648, 655 (E.D. Pa. 2005) (declining to infer a private right of action under § 304 of the Sarbanes-Oxley Act); *see also Kogan*, 432 F.Supp. 2d at 1082 (same); *In re Bisys Group Inc.*, 396 F.Supp. 2d 463 (S.D.N.Y. 2005) (same). Because neither the text of §§ 302, 906 or 402 nor the structure of the Sarbanes-Oxley Act demonstrates Congressional intent to create a private remedy in favor of Plaintiffs, I cannot infer a private right of action under these sections. Therefore Plaintiffs' Third, Fourth and Fifth Claims for relief alleging violations of §§ 906, 302 and 402 of the Sarbanes-Oxley Act and § 13(k) of the Exchange Act are **DISMISSED**.

5.   <u>Seventh Claim for Relief</u>

The MDC Defendants next move for dismissal of Plaintiffs' Seventh Claim for Relief pursuant to § 20(a) of the Exchange Act, 15 U.S.C. § 78t, which provides in part that "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person . . . ." The MDC Defendants contend that § 20(a) is not a separate cause of action, and that

Plaintiffs have failed to plead a primary violation of the Exchange Act in connection with this claim.  Plaintiffs assert that the Amended Complaint adequately alleges primary violations of the Exchange Act, which are incorporated into their § 20(a) claim.

In order to establish liability under § 20(a), Plaintiffs must demonstrate a primary violation of the Exchange Act and control over the primary violator.  *City of Philadelphia v. Flemming Co. Inc.*, 264 F.3d 1245 (10th Cir. 2001).  I find that Plaintiffs have adequately pled "controlling person" liability and I find no basis for dismissing Plaintiffs' Seventh Claim for Relief.

## 6.    Eighth Claim for Relief

I now turn to the MDC Defendants' request for dismissal of Plaintiffs' Eighth Claim for Relief pursuant to § 16(a) of the Exchange Act for the MDC Defendants' alleged failure to file Forms 3 and 4.  15 U.S.C. § 78(p).  Section 16(a) requires directors, officers and principal stockholders of a security to file certain forms, including a statement of ownership by an owner of more than 10 percent of a security.  Similar to Plaintiffs' claims under §§ 13(a) and (d) of the Exchange, § 16(a) is, on its face, a filing requirement, and "[n]o enforcement rights are expressly conferred on private parties."  *See Scientex Corporation*, 689 F.2d 879, 882 (9th Cir. 1982); *Eisenberger v. Spectex Industries, Inc.*, 644 F.Supp. 48, 51 (E.D.N.Y. 1986); *see also Touche Ross & Co.*, 442 U.S. at 574.  In addition, § 16(b) provides a specific method for enforcement, which is further proof that Congress did not intend to provide a private remedy under § 16(a).  *See Scientex*, 689 F.2d at 882-83.  The cases cited by Plaintiffs in support of their contention that a private right of action does exist under § 16(a) are not persuasive.  I

find that no private cause of action exists under § 16(a).  Accordingly, Plaintiffs' Eighth

Claim for Relief is **DISMISSED**.

      7.    <u>Tenth, Twelfth, and Thirteenth Claims for Releif</u>

      Finally, the MDC Defendants move to dismiss Plaintiff's Tenth, Twelfth and

Thirteenth Claims for Relief asserting that these claims for "Ultra Vires Acts," "Abuse of

Control," and "Gross Mismanagement" are not independent causes of action, but rather

acts that together constitute part of Plaintiffs' Eleventh Claim for Relief for "Breach of

Fiduciary Duty."

      In response to the motion to dismiss, Plaintiffs contend that their state law claims

are recognized under Nevada State Law, the state in which MDC is incorporated.  The

MDC Defendants do not dispute that Nevada law applies to Plaintiffs state law claims,

but contend that Plaintiffs' claims for ultra vires, abuse of control and gross

mismanagement, are not recognized causes of action under Colorado or Nevada law.

While neither party has briefed the choice of law issue, I note that Plaintiffs bear the

burden of demonstrating that they are entitled to relief under the theories pled in their

First Amended Complaint.  Without out deciding which state's substantive law applies

to Plaintiffs' state law claims, I note that none of the Nevada authorities cited by

Plaintiffs recognizes ultra vires, abuse of control, and gross mismanagement as

separate and independent causes of action.  In addition, Plaintiffs have cited no

Colorado authority, nor is this Court aware of any Colorado authority, that recognizes

these claims for relief.  Therefore, under either Colorado or Nevada state law, Plaintiffs'

Tenth, Twelfth, and Thirteenth Claims for Relief must be **DISMISSED**.  I agree with the

MDC Defendants that the alleged actions underlying these claims are subsumed in Plaintiffs' claim for Breach of Fiduciary Duty.

      B.    <u>Motion to Strike Certificates of Review</u>

      I next address Defendant Comiskey & Company's Motion to Strike Certificates of Review and to Dismiss First Amended Verified Complaint Pursuant to C.R.S. § 13-20-602(4), filed December 2, 2005 (docket #114).  Plaintiffs bring claims against Defendants Anderson & Whitney and Comiskey & Company for professional negligence and accounting malpractice, and for aiding and abetting breaches of fiduciary duty, abuse of control, unjust enrichment, gross mismanagement, and alleged violations of § 13(a) of the Exchange Act and the Sarbanes-Oxley Act.  In connection with these claims, Plaintiffs filed a Certificate of Review on September 13, 2005 and an amended Certificate of Review of Plaintiffs' Attorney Pursuant to C.R.S. § 13-20-602(3)(a) on October 18, 2005.  Plaintiffs' First Amended Verified Complaint was filed on November 21, 2005.  Comiskey & Company requests that I strike the Certificates as untimely or, in the alternative, require disclosure of the identity of the professional consulted and conduct an *in camera* review to determine the adequacy of the certificates in accordance with *Redden v. SCI Colorado Funeral Services, Inc.*, 38 P.3d 75 (Colo. 2001).

      C.R.S. § 13-20-602 provides that in an action for damages based on alleged professional negligence of a licensed professional, the plaintiff's attorney shall file with the court a certificate of review within sixty days after the service of the complaint unless the court determines that a longer period is necessary for good cause shown.

Sections 13-20-602(3)(a)(I)(II) & (c) require that the certificate of review shall be executed by the attorney for plaintiff and shall declare:

> (I) That the attorney has consulted a person who has expertise in the area of the alleged negligent conduct; and
>
> (II) That the professional who has been consulted pursuant to subparagraph (I) of the paragraph (a) has reviewed the known facts, including such records, documents, and other materials which the professional has found to be relevant to the allegations of negligent conduct and, based on the review of such facts, has concluded that the filing of the claim . . . does not lack substantial justification within the meaning of section 13-17-102(4).
> . . .
>
> (c) . . . the certificate of review shall declare that . . . the person consulted can demonstrate by competent evidence that, as a result of training, education, knowledge and experience, the consultant is competent to express an opinion as to the negligent conduct alleged.

Plaintiffs' Certificates of Review are untimely.  However, Plaintiffs contend that they were not required to file Certificates of Review in this case and did so only after consulting with Comisky's counsel.  Assuming, without deciding, that Certificates of Review are required, I find that Plaintiffs' Certificate of Review and Amended Certificate of Review contain the declarations required by § 602(3) and that an *in camera* review of the contents of the Certificates is not necessary.  I further find that Plaintiffs delay in filing the Certificates of Review caused no prejudice to Defendant Comisky.  The Motion to Strike Certificates of Review and to Dismiss First Amended Verified Complaint Pursuant to C.R.S. § 13-20-602(4) is **DENIED**.

C.    Motion to Dismiss Nineteenth Claim for Relief

I now turn to the Motion of Defendant Comiskey & Company to Dismiss
Nineteenth Claim for Relief Pursuant to Fed. R. Civ. P. 12(b)(6), filed December 6,
2005 (docket #116).  Plaintiffs' Nineteenth Claim for Relief against Comiskey is for
aiding and abetting other Defendants in alleged violation of § 13(a) of the Exchange
Act.  As discussed above, there is no private right of action under § 13(a), and Plaintiffs
claims against the Management Defendants under this subsection are properly
dismissed.  Therefore, I also dismiss Plaintiffs' claim for aiding and abetting violations
of § 13(a).  The Motion of Defendant Comiskey & Company to Dismiss Nineteenth
Claim for Relief is **GRANTED**.

D.    Motion to Dismiss Claims Against Accountant Defendants

I now turn to Defendant Comiskey & Company's Motion for Partial Summary
Judgment as to Derivative Claims Alleged in First Amended Verified Complaint, filed
December 2, 2005 (docket #110) and Anderson & Whitney's Rule 12(b)(6) Motion to
Dismiss Claims, filed December 6, 2005 (docket # 118).  Both Comiskey & Company
and Anderson & Whitney (collectively the "Accounting Defendants") seek dismissal of
the derivative claims asserted against them.

Plaintiffs' Seventeenth, Eighteenth, Nineteenth Claims for Relief against the
Accounting Defendants are for Professional Negligence and Accounting Malpractice;
Aiding and Abetting Breaches of Fiduciary Duty, Abuse of Control, Unjust Enrichment
and Gross Mismanagement; and Aiding and Abetting alleged violations of § 13(a) of
the Securities Exchange Act of 1934 and Rules 13a-14 and 13a-15, and §§ 302 and

906 of the Sarbanes-Oxley Act of 2002.  In addition, Plaintiffs assert a Twentieth Claim

for Relief against Defendant Anderson & Whitney for Aiding and Abetting violations of

 § 14(a) of the Exchange Act.

Plaintiffs' Nineteenth Claim has been dismissed, and Plaintiffs' claims for abuse

of control, unjust enrichment and gross mismanagement have been dismissed.

Therefore, the claims remaining against the Accounting Defendants are the

Seventeenth Claim for Relief for Negligence and Accounting Malpractice, the portion of

the Eighteenth Claim for Relief for Aiding and Abetting Breaches of Fiduciary Duty, and

the Twentieth Claim for Relief against Defendant Anderson & Whitney for Aiding and

Abetting violations of § 14(a).

    1.    Rule 23.1

Defendant Comiskey & Company seeks partial summary judgment in its favor as

to the derivative claims asserted against it based on Plaintiffs' failure to allege,

pursuant to Fed.R.Civ.P. 23.1, that demand was made upon the directors of MDC, or

MDC's other shareholders, to bring suit against Defendant Comiskey & Company, or

that such demand would be futile.  Defendant Anderson & Whitney has moved to

dismiss Plaintiffs' derivative claims against it on the same grounds.

Rule 23.1 provides in relevant part:

> In a derivative action . . . the complaint shall . . . allege with
> particularity the efforts, if any, made by the plaintiff to obtain
> the action the plaintiff desires from the directors or
> comparable authority and, if necessary, from the
> shareholders or members, and the reasons for the plaintiff's
> failure to obtain the action or for not making effort.

"The recognized purpose behind Rule 23.1 is to avoid multiplicity of suits against corporations by individual shareholders or small groups of shareholders." *Brooks v. Land Drilling Co.*, 564 F.Supp. 1518, 1521 (D. Colo. 1983). I have serious doubts as to whether the Accounting Defendants have standing to assert a defense under Rule 23.1. However, even if I assume that the Accounting Defendants have standing to assert this defense, I find that Plaintiffs are excused from the demand requirement in this case due to futility. "[F]ederal courts apply the demand futility exception as it is defined by the law of the State of incorporation." *Andropolis v. Snyder*, 2006 WL 2226189 *6 (D. Colo., Aug. 3, 2006) (quoting *Kamen v. Kemper Fin. Serv., Inc.*, 500 U.S. 90, 108-09 (1991)). MDC is incorporated in Nevada. The Nevada Supreme Court has determined that a two-pronged demand futility analysis applies. *Shoen v. SAC Holding Corp.*, 137 P.3d 1171, 1182 (Nev. 2006). Under this analysis, the futility exception applies where the particularized factual allegations in the complaint create a reasonable doubt as to whether the directors are disinterested and independent and whether they are entitled to protection under the business judgment rule. *Shoen*, 137 P.3d at 1182.

Here, the First Amended Complaint alleges that the entire board of MDC "looted [MDC's] assets through concealed 'off the books' payments, sham loans and other bogus transactions including their fraudulent acquisition of [MDC's] business for a promissory note issued by an insolvent company" owned by the Management Defendants. First Am. Comp. at pg. 2. The First Amended Complaint further alleges that the Management Defendants fraudulently "wiped out [MDC's] shareholders' equity,

rendering the Company an insolvent shell and purportedly in debt to the Directors." *Id.*

In addition, it is alleged that Plaintiffs, though counsel, sent a letter to the Management

Defendants on or about November 29, 2004, notifying them of Plaintiffs' intent to file a

derivative action.  According to the First Amended Complaint, the Management

Defendants responded to the letter by stating that "[t]he Company and the purported

Defendants intend to respond following service of the complaint."  First Am. Comp. at

¶¶ 182-185.  These allegations, combined with the fact that Plaintiffs have asserted

that the Accounting Defendants aided and abetted the Management Defendants in their

alleged wrongful activities, sufficiently demonstrate that it would have been futile for

Plaintiffs to demand that the MDC bring suit against the Accounting Defendants under

the *Shoen* test.  I further find that because the Management Defendants own 40% of

MDC's public shares, demand on MDC's remaining shareholders was not required.

*Golden v. Garafalo*, 678 F.2d 1139, 1146 (2d Cir. 1982).  Comiskey & Company's

Motion for Partial Summary Judgment as to Derivative Claims Alleged in First Amended

Verified Complaint is **DENIED**.  In addition, the portion of Defendant Anderson &

Whitney's motion to dismiss based on Rule 23.1's demand requirement is **DENIED**.

## 2.   Accountant-Client Privilege

Defendant Anderson & Whitney also asserts in its motion to dismiss that the

derivative portion of Plaintiffs' claims against it must be dismissed because MDC has a

statutory accountant-client privilege with Anderson & Whitney, and Anderson &

Whitney cannot fairly defend against these claims without breaching its duty to MDC.

Anderson & Whitney contends that it is entitled to be protected from compelled

disclosure of privileged information pursuant to C.R.S. § 13-90-107(1)(f)(I), which

provides that "a person shall not be examined as a witness in the following cases: (f) A

certified public accountant shall not be examined without the consent of his or her client

as to any communication made by the client to him or her . . . in the course of

professional employment . . .."  Anderson & Whitney further contend that, MDC has not

waived the privilege, that Plaintiffs as shareholders do not have the corporate authority

to waive the privilege, that it is precluded from disclosing any information regarding

what MDC's employees, officers, and directors may or may not have disclosed to them

during the course of their audit work, and that it is unable to defend itself without

disclosing such communications.

There are several reasons why this issue cannot be decided at this juncture of

the case. First, Anderson & Whitney has not adequately briefed why state, as opposed

to federal, privilege law should apply.  The First Amended Complaint alleges that this is

a shareholders' derivative action brought pursuant to Fed.R.Civ.P. 23.1 for alleged

violations of Federal securities law and that this Court has jurisdiction over pendant

state law claims pursuant to 28 U.S.C. § 1367(a).  Plaintiffs have asserted claims

against Anderson & Whitney based on both state and federal law.  "It is well settled that

there is no confidential accountant-client privilege under federal law.  Furthermore, in

federal cases there is no state created accountant-client privilege." *In re Grand Jury

Proceedings*, 658 F.2d 782, 784 (10th Cir. 1981).  Moreover, even if I were to apply

state privilege law in this case, the parties have not adequately briefed whether

Colorado or Nevada's privilege law governs this dispute.  Finally, I have reservations

as to whether Anderson & Whitney has standing to assert the accountant-client privilege, given that the privilege presumably belongs to MDC, and it appears that MDC has not asserted the accountant-client privilege in this case.  In addition, Anderson & Whitney has raised this privilege issue in a motion to dismiss, rather than in the context of a particular discovery dispute.  In support of its argument that the claims against it should be dismissed, it cites a single case from the California Court of Appeals which holds that a derivative action against the corporation's outside counsel raised attorney-client privilege issues which prevent the attorney defendants from mounting a meaningful defense to the action.  *McDermott, Will & Emery v. Superior Court*, 83 Cal.App.4th 378, 383 (Cal. App. 2000).  That case dealt with the attorney-client privilege, not the account-client privilege, and did not recognize the exception to the attorney-client privilege set forth in *Garner v. Wolfinbarger*, 430 F.2d 1093, 1103-04 (5th Cir. 1970).  As noted in previous orders, this Court has applied the *Garner* doctrine and upheld the Magistrate Judge's decision to compel disclosure of certain documents alleged to be protected by the attorney-client privilege.  I am not bound by the *McDermott* decision and find it to be of limited utility in the context of this case.  For these reasons, Anderson & Whitney's Rule 12(b)(6) Motion to Dismiss Claims is **DENIED**.

     E.    <u>Motions to Strike First Amended Verified Complaint for Failure to Comply with Rules 8 and 9(b)</u>

     Finally, I address the MDC Defendants' motion to strike Plaintiffs' First Amended Verified Complaint ("Amended Complaint") for Failure to Comply with Rules 8 & 9(b),

filed December 2, 2005 (docket #106), and Defendant Comiskey & Company's Motion to Strike First Amended Verified Complaint for Failure to Comply With Rules 8 and 9(b), filed December 2, 2005 (docket #112).

The MDC Defendants contend that the First Amended Complaint improperly contains redundant and immaterial legal conclusions, factual arguments and prolix statements of law. Specifically, the MDC Defendants request that I strike the First Amended Complaint following resolution of the their motion to dismiss and permit Plaintiffs to file an amended complaint containing a short and plain statement of their remaining claims. Similarly, Defendant Comiskey & Company contends that the First Amended Complaint is lengthy, repetitive, and replete with legal and factual argument. Defendant Comiskey & Company also asserts that the claims asserted against it do not meet the heightened pleading requirements of Rule 9(b), and requests that I order Plaintiffs to refile a complaint that complies with Rules 8 and 9.

Fed.R.Civ.P. Rule 8(a) states that a complaint "shall contain (1) a short and plain statement of grounds upon which the court's jurisdiction depends, . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks." The requirements of Rule 8(a) guarantee that "defendants enjoy fair notice of what the claims against them are and the grounds upon which they rest." *TV Communications Network, Inc. v. ESPN, Inc.*, 767 F. Supp. 1062, 1069 (D. Colo. 1991), *aff'd*, 964 F.2d 1022 (10th Cir. 1992). The philosophy of Rule 8(a) is reinforced by Rule 8(e)(1) which provides that "[e]ach averment of a pleading shall be simple, concise and direct." Taken together, Rule 8(a)

and (e)(1) underscore the emphasis placed on clarity and brevity by the federal pleading rules. Prolix, vague, or unintelligible pleadings violate the requirements of Rule 8. A decision to dismiss a pleading pursuant to Rule 8 is within the trial court's sound discretion. *See Atkins v. Northwest Airlines, Inc.*, 967 F.2d 1197, 1203 (8th Cir. 1992); *Gillibeau v. City of Richmond*, 417 F.2d 426, 431 (9th Cir. 1969).

I note that Plaintiffs' First Amended Complaint is 94 pages in length and contains 318 individually numbered paragraphs, several of which contain numerous subsections. Plaintiffs contend that the length of the First Amended Complaint is generated by their need to meet the heightened pleading standards for asserting common law securities fraud claims. As set forth above, I have dismissed Plaintiffs' Third, Fourth, Fifth, Eighth, Ninth, Tenth, Twelfth, Thirteenth and Nineteenth Claims for Relief. Many of the allegations in the First Amended Complaint relate exclusively to claims that have been dismissed. However, at this stage of the litigation it would serve no useful purpose to require Plaintiffs to file a Second Amended Complaint. Therefore, the MDC Defendants' Motion to Strike is **DENIED**.

I now turn to Defendant Comiskey & Company's Motion to Strike the Verified Complaint for Failure to Comply With Rule 8 and 9(b). As previously discussed, the remaining claims against Defendant Comiskey & Company are for Professional Negligence, Accounting Malpractice, and a claim for Aiding and Abetting Breach of Fiduciary Duty.

Rule 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." "Rule 9(b) does not

-24-

require that a complaint set forth detailed evidentiary matter as to why particular

defendants are responsible for particular statements, or that the allegations be factually

or legally valid." *Schwartz v. Celestial Seasonings, Inc*, 124 F.3d 1246, 1253 (10th Cir.

1997). "Instead, Rule 9(b) requires that the pleadings give notice to the defendants of

the fraudulent statements for which they are responsible." *Id.* In other words, the

complaint must give the defendants notice of what they are charged with, and "[n]o

more is required by Rule 9(b)." *Id.* This Court has explained the purpose of Rule 9(b)

as follows:

> The point of the rule is to provide enough notice to each
> defendant of the misrepresentations the defendant made so
> that he can answer and otherwise defend himself. . . . The
> rule does not require extensive factual pleading.  As an
> exception to rule eight's requirement that pleadings should
> be simple, concise and direct, rule 9 is read restrictively, not
> expansively. . . . It does not require plaintiffs to plead
> extensive facts.  It only requires that plaintiff prove the
> circumstances of the fraud.

*Gardner v. Investors Diversified Capital, Inc.*, 805 F. Supp. 874, 876 (D. Colo. 1992).

With regard to private actions commenced pursuant to the Private Securities Litigation

Reform Act ("PSLRA"), which alleges that the defendant (A) made an untrue statement

of material fact; or (B) omitted material facts, the complaint "shall specify each

statement alleged to have been misleading, the reason or reasons why the statement is

misleading, and, if an allegation regarding the statement or omission is made on

information and belief, the complaint shall state with particularity all facts on which that

belief is formed."  *See* 15 U.S.C. § 78u-4(b)(1).

The principal allegations concerning Defendant Comiskey & Company are found

in ¶¶ 49-56 and 142-166 of the First Amended Complaint.  Plaintiffs allege that during

Comiskey & Company's tenure as MDC's auditor, Comiskey & Company's audits did

not comply with applicable rules and regulations, MDC's financial statements were

false and misleading, Comiskey & Company should have known that MDC's financial

statements were false and misleading, and Comiskey & Company failed to properly

audit MDC's financial statements.  As to allegations that Comiskey & Company should

have known that MDC's financial statements were false and misleading, Plaintiffs have

identified each of the allegedly false SEC Report financial statements audited and

reviewed by Comiskey & Company and the statements in those reports which Plaintiffs

contend are misleading.  First Am. Comp. at ¶¶ 93-105.  I find that the First Amended

Complaint adequately sets forth allegations for fraud against Comiskey & Company

with the particularity required by Rule 9(b) and the PSLRA.  Defendant Comiskey &

Company's Motion to Strike First Amended Verified Complaint for Failure to Comply

With Rules 8 and 9(b) is **DENIED**.

IV.    CONCLUSION

In conclusion, for the reasons set forth above, it is hereby

ORDERED that Defendants' Norman M. Dean, James E. Miller, Clark E. Miller,

Miller Diversified Corporation and Miller Feedlots, Inc. Combined Motion to Dismiss

and Motion to Strike First Amended Complaint, filed December 2, 2005 (docket #106) is

**GRANTED IN PART AND DENIED IN PART**.  It is **GRANTED** to the extent that

Plaintiffs' Third, Fourth, Fifth, Eight, Ninth, Tenth, Twelfth, and Thirteenth Claims for

Relief are **DISMISSED**.  It is **DENIED** with respect to Defendants' request for dismissal

of Plaintiffs' Sixth Claim for Relief, and it is **DENIED** with respect to Defendants' request to strike the First Amended Complaint.  It is

FURTHER ORDERED that Defendant Comiskey & Company's Motion for Partial Summary Judgment as to Derivative Claims Alleged in First Amended Verified Complaint, filed December 2, 2005 (docket #110) is **DENIED**.  It is

FURTHER ORDERED that Defendant Comiskey & Company's Motion to Strike First Amended Verified Complaint for Failure to Comply With Rules 8 and 9(b), filed December 2, 2005 (docket #112) is **DENIED**.  It is

FURTHER ORDERED that Defendant Comiskey & Company's Motion to Strike Certificates of Review and to Dismiss First Amended Verified Complaint Pursuant to C.R.S. § 13-20-602(4), filed December 2, 2005 (docket #114) is **DENIED**.  It is

FURTHER ORDERED that the Motion of Defendant Comiskey & Company to Dismiss Nineteenth Claim for Relief Pursuant to Fed. R. Civ. P. 12(b)(6), filed December 6, 2005 (docket # 116) is **GRANTED**, and Plaintiffs' Nineteenth Claim for Relief is **DISMISSED**.  It is

FURTHER ORDERED that Anderson & Whitney's Rule 12(b)(6) Motion to Dismiss Claims, filed December 6, 2005 (docket # 118) is **DENIED**.

Dated:  September 26, 2006

BY THE COURT:
s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge